IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

|  |  |
|---|---|
| COMMERCE AND INDUSTRY INSURANCE COMPANY, as subrogee of Charles and Jennifer Kelley,<br><br>　　　Plaintiff,<br><br>　　vs.<br><br>WATTS WATER TECHNOLOGIES, INC.; WATTS REGULATOR CO.; JOHN AND JANE DOES 1-20; DOE CORPORATIONS 1-20; DOE PARTNERSHIPS 1-20; DOE GOVERNMENTAL ENTITIES 1-20; DOE ENTITIES 1-20,<br><br>　　　Defendants. | Civ. No. 15-00324 HG-KJM |

**ORDER GRANTING DEFENDANTS WATTS WATER TECHNOLOGIES, INC. AND WATTS REGULATOR CO.'S MOTION FOR SUMMARY JUDGMENT (ECF No. 52)**

　　Plaintiff Commerce and Industry Insurance Company has filed a Complaint alleging claims of strict products liability and negligence against Defendants Watts Water Technologies, Inc. and Watts Regulator Company.  Plaintiff alleges that in August 2002 Defendants manufactured a toilet connector, which they sold and distributed in 2003 with a one-year limited warranty.  Plaintiff asserts that more than ten years later, the toilet connector malfunctioned and caused water to flow into the home of Charles and Jennifer Kelley, resulting in over $350,000 in damages.

　　Plaintiff insured the Kelleys and reimbursed them for the

1

damage to their home.  Plaintiff seeks to recover the payments it issued to the Kelleys as it is subrogated to the Kelleys' right of recovery against Defendants.

Defendants filed a Motion for Summary Judgment asserting that both tort causes of action in Plaintiff's Complaint are barred pursuant to the economic loss rule.  Defendants argue the Plaintiff is precluded from bringing tort causes of action to recover purely economic damages.

Defendants' Motion for Summary Judgment (ECF No. 52) is **GRANTED**.

## PROCEDURAL HISTORY

On July 17, 2015, Plaintiff Commerce and Industry Insurance Company, as subrogee of Charles and Jennifer Kelley, filed a Complaint in the Circuit Court of the First Circuit, State of Hawaii.  (ECF No. 2-2).

On August 13, 2015, Defendants Watts Water Technologies, Inc. and Watts Regulator Company removed the state court action to the United States District Court, District of Hawaii.  (ECF No. 2).

On June 7, 2016, Defendants filed DEFENDANTS WATTS WATER TECHNOLOGIES, INC. AND WATTS REGULATOR CO.'S MOTION FOR SUMMARY JUDGMENT (ECF No. 52) along with DEFENDANTS WATTS WATER TECHNOLOGIES, INC. AND WATTS REGULATOR CO.'S SEPARATE AND CONCISE

STATEMENT IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT.  (ECF No. 53).

On June 16, 2016, the Court issued a briefing schedule.  (ECF No. 54).

On June 28, 2016, Plaintiff filed PLAINTIFF COMMERCE AND INDUSTRY INSURANCE COMPANY'S OPPOSITION TO DEFENDANTS WATTS WATER TECHNOLOGIES, INC. AND WATTS REGULATOR CO.'S MOTION FOR SUMMARY JUDGMENT (ECF No. 55) along with PLAINTIFF COMMERCE AND INDUSTRY INSURANCE COMPANY'S RESPONSE TO DEFENDANTS WATTS WATER TECHNOLOGIES, INC. AND WATTS REGULATOR CO.'S SEPARATE AND CONCISE STATEMENT IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT.  (ECF No. 56).

On June 30, 2016, Plaintiff requested a continuance for the scheduled hearing date for Defendants' Motion for Summary Judgment, which was granted.  (ECF Nos. 59, 60).

On July 27, 2016, Defendants filed DEFENDANTS WATTS WATER TECHNOLOGIES, INC. AND WATTS REGULATOR CO.'S MOTION FOR LEAVE TO FILE DEFENDANTS WATTS WATER TECHNOLOGIES, INC. AND WATTS REGULATOR CO.'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT.  (ECF No. 62).

On July 28, 2016, the Court issued an Order granting Defendants' Motion for Leave to file a Reply.  (ECF No. 63).

On the same date, Defendants filed DEFENDANTS WATTS WATER TECHNOLOGIES, INC. AND WATTS REGULATOR CO.'S REPLY MEMORANDUM IN

SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT.  (ECF No. 64).

On July 29, 2016, Plaintiff filed a Response that it did not oppose Defendants' Motion for Leave to file a Reply.  (ECF No. 65).

On August 11, 2016, the Court held a hearing on Defendants' Motion for Summary Judgment.

## BACKGROUND

The Parties agree to the following facts:

In August 2002, Defendants Watts Water Technologies, Inc. and Watts Regulator Company manufactured a toilet connector that it distributed and sold in 2003.  (Declaration of Gregory Gyorda, Director of Marketing and Communications for Defendants Watts Water Technologies, Inc. and Watts Regulator Company, ("Gyorda Decl.") at ¶¶ 1, 5, attached to Def.'s Concise Statement of Facts ("CSF"), ECF No. 53-2).  A toilet connector is a small hose with a coupling nut that connects a toilet to a home's interior plumbing for the purpose of supplying water to the toilet. (Gyorda Decl. at ¶ 3, attached to Def.'s CSF, ECF No. 53-2; Photograph of toilet connector, attached as Ex. E to Def.'s CSF, ECF No. 53-7).

The toilet connector manufactured and distributed by Defendants was used to connect a toilet to the interior plumbing in the home of Jennifer and Charles Kelley in Honolulu, Hawaii.

(Toilet connector, attached as Ex. E to Def.'s CSF, ECF No. 53-7; Complaint at ¶¶ 7-8, attached as Ex. A to Def.'s CSF, ECF No. 53-3).

At the hearing, Plaintiff's counsel stated that the Kelleys' home was built in the 1930's and was purchased by the Kelleys in the 1990's. The installation of the toilet connector occurred sometime after its manufacturing date of August 2002.

Although the Kelleys have owned the home since the 1990's, Plaintiff has not provided any information as to when the toilet connector was purchased, when it was installed or who installed it. While the product was manufactured in 2002, Plaintiff stated in its First Supplemental Answers to Interrogatories that "it has no information regarding who installed or assisted in installing the toilet connector. Plaintiff consulted with the Kelleys and the Kelleys do not know who installed the toilet connector." (Pla.'s First Supp. Answers at p. 4, attached as Ex. F to Pla.'s CSF, ECF No. 57-1).

The toilet connector was sold with a limited one-year warranty provision by Defendant Watts Regulator Company. (Warranty attached as Ex. D to Def.'s CSF, ECF No. 53-6).

The warranty provided, as follows:

> **Limited Warranty:** Watts Regulator Company warrants each product to be free from defects in material and workmanship under normal usage for a period of one year from the date of original shipment. In the event of such defects within the warranty period, the Company will, at its option, replace or recondition the product

>without charge.  This shall constitute the sole and exclusive remedy for breach of warranty, and the Company shall not be responsible for any incidental, special, or consequential damages, including without limitation, lost profits or the cost of repairing or replacing other property which is damaged if this product does not work properly, other costs resulting from labor charges, delays, vandalism, negligence, fouling caused by foreign material, damage from adverse water conditions, chemical, or any other circumstances over which the Company has no control.  This warranty shall be invalidated by any abuse, misuse, misapplication or improper installation of the product. **THIS WARRANTY IS IN LIEU OF ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.** Any implied warranties that are imposed by law are limited in duration to one year.
>
>Some States do not allow limitations on how long an implied warranty lasts, and some States do not allow the exclusion or limitation of incidental or consequential damages.  Therefore the above limitations may not apply to you.  This Limited Warranty gives you specific legal rights, and you may have other rights that vary from State to State.  You should consult applicable state laws to determine your rights.

(Warranty, attached as Ex. D to Def.'s CSF, ECF No. 53-6).

Plaintiff Commerce and Industry Insurance Company insured Jennifer and Charles Kelley for their property located in Honolulu, Hawaii.

On July 18, 2013, more than ten years after the toilet connector was manufactured, Jennifer and Charles Kelley filed a claim, entitled a report, with Plaintiff for damages incurred. (Damage Summary submitted to Plaintiff Commerce and Industry Insurance Company, attached as Ex. C to Def.'s CSF, ECF No. 53-5).  The damage report asserted that on July 18, 2013, the

Defendants' toilet connector malfunctioned, flooded the Kelleys' home, and caused damage. (Id.)

```
The damages were listed as follows:
$ 13,352.69    for water restoration services
$325,110.72    for home reconstruction and repairs
$  1,190.21    for replacement of an area rug
$    142.93    for repair of a picture frame
$ 18,900.00    for lost rental income
$  1,139.12    for electric bills for drying equipment
$359,825.77    total claimed loss
```

(Damage Summary and invoices, attached as Ex. C to Def.'s CSF, ECF No. 53-5).

Plaintiff Commerce and Industry Insurance Company asserts that it approved the damages claim made by the Kelleys and paid them for their losses. (Plaintiff's First Supplemental Answers to Defendants' First Request for Answers to Interrogatories at pp. 3-4, attached as Ex. F to Pla.'s CSF, ECF No. 57-1).

Plaintiff seeks to recover damages from Defendants Watts Water Technologies, Inc. and Watts Regulator Company, as subrogee of Jennifer and Charles Kelley. The Plaintiff Insurance Company asserts tort claims of negligence and strict products liability. (Id.; Complaint at ¶¶ 21-37, attached as Ex. A to Def.'s CSF, ECF No. 53-3).

## STANDARD OF REVIEW

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). To defeat

summary judgment there must be sufficient evidence that a reasonable jury could return a verdict for the nonmoving party. Nidds v. Schindler Elevator Corp., 113 F.3d 912, 916 (9th Cir. 1997).

The moving party has the initial burden of "identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  The moving party, however, has no burden to negate or disprove matters on which the opponent will have the burden of proof at trial.  The moving party need not produce any evidence at all on matters for which it does not have the burden of proof.  Celotex, 477 U.S. at 325.  The moving party must show, however, that there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of law.  That burden is met by pointing out to the district court that there is an absence of evidence to support the non-moving party's case.  Id.

If the moving party meets its burden, then the opposing party may not defeat a motion for summary judgment in the absence of probative evidence tending to support its legal theory. Commodity Futures Trading Comm'n v. Savage, 611 F.2d 270, 282 (9th Cir. 1979).  The opposing party must present admissible

evidence showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); Brinson v. Linda Rose Joint Venture, 53 F.3d 1044, 1049 (9th Cir. 1995). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Nidds, 113 F.3d at 916 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986)).

The court views the facts in the light most favorable to the non-moving party. State Farm Fire & Casualty Co. v. Martin, 872 F.2d 319, 320 (9th Cir. 1989). Opposition evidence may consist of declarations, admissions, evidence obtained through discovery, and matters judicially noticed. Fed. R. Civ. P. 56(c); Celotex, 477 U.S. at 324. The opposing party cannot, however, stand on its pleadings or simply assert that it will be able to discredit the movant's evidence at trial. Fed. R. Civ. P. 56(e); T.W. Elec. Serv., 809 F.2d at 630. The opposing party cannot rest on mere allegations or denials. Fed. R. Civ. P. 56(e); Gasaway v. Northwestern Mut. Life Ins. Co., 26 F.3d 957, 959-60 (9th Cir. 1994). When the non-moving party relies only on its own affidavits to oppose summary judgment, it cannot rely on conclusory allegations unsupported by factual data to create an issue of material fact. Hansen v. United States, 7 F.3d 137, 138 (9th Cir. 1993); see also National Steel Corp. v. Golden Eagle Ins. Co., 121 F.3d 496, 502 (9th Cir. 1997).

## **ANALYSIS**

Plaintiff Commerce and Industry Insurance Company has filed tort causes of action against Defendants Watts Water Technologies, Inc. and Watts Regulator Company.  Charles and Jennifer Kelley purchased their home in the 1990's.  Plaintiff seeks to recover economic damages to the Kelleys' home based on alleged defects in a toilet connector manufactured by Defendants in August 2002 and distributed and sold in 2003.

The toilet connector was sold with a one-year warranty.  Despite the one-year warranty, Plaintiff seeks to recover for damages that occurred in the home of Charles and Jennifer Kelley in July 2013, more than ten years after the product was manufactured.  Neither Plaintiff nor the Kelleys have provided any history of the purchase or installation of the product.

Defendants assert that Plaintiff's claims are barred pursuant to the economic loss rule.  Defendants assert that Plaintiff's negligence and product liability claims may not be brought where there was no physical injury and only consequential economic damages that occurred more than ten years after the component part was placed in the stream of commerce.

**I.    The Economic Loss Rule**

Hawaii follows the majority rule for the economic loss rule. The economic loss rule precludes recovery in tort for purely

economic damages. <u>Association of Apartment Owners of Newtown Meadows ex rel. its Bd. Of Directors v. Venture 15, Inc.</u>, 167 P.3d 225, 294-95 (Haw. 2007). The crux of the economic loss rule is that economic interests are protected, if at all, by contract principles, rather than tort principles. <u>Id.</u> at 284 (citing <u>Calloway v. City of Reno</u>, 993 P.2d 1259 (2000)).

**A.   The Hawaii Supreme Court's Decision in <u>Newtown Meadows</u>**

The Hawaii Supreme Court applied the economic loss rule in the context of negligence and products liability claims in <u>Newtown Meadows</u>, 167 P.3d 225 (Haw. 2007).

<u>Newtown Meadows</u> involved a suit brought by an association of apartment owners that sought to recover damages from a masonry subcontractor. The apartment association claimed that in October 1986 the masonry subcontractor had installed defective concrete slabs at their residential condominium complex. <u>Id.</u> at 232-33. The apartment owners alleged that beginning less than two years later in January 1988, their buildings and foundations had shifted, settled, and cracked as a result of the allegedly defective concrete slabs. <u>Id.</u> The apartment owners brought a number of claims against the masonry subcontractor including negligence and products liability. <u>Id.</u> at 239.

The masonry subcontractor argued that the negligence and products liability claims were barred pursuant to the economic

loss rule. Id. at 278. The apartment owners asserted that the economic loss rule did not apply because they incurred a variety of damages including cracked floor tiles, damaged walls, skewed door jams and windows, and damage caused by termites that entered through the cracks caused by the allegedly defective slabs. Id. at 287.

The Hawaii Supreme Court ruled that the economic loss rule precluded recovery in tort from the masonry subcontractor for damages caused by the allegedly defective concrete slabs. Id. at 287-88. The Supreme Court found that the damages claimed by the apartment owners were purely economic consequential damages as a result of the allegedly defective product. Id. at 294-95. The Court held that the masonry subcontractor could not be liable in tort for claims that were based on the parties' underlying contract. Id.

**B.     Economic Loss is Protected by Contract Rather than Tort**

Tort and contract law are two separate and distinct theories of recovery in civil cases. Contract law is designed to enforce the expectations created by an agreement by the parties and seeks to enforce the standards of quality that were negotiated. Id.; East River S.S. Corp. v. Transamerica Delaval, Inc., 476 U.S. 858, 871-73 (1986). The standard of quality set forth in the contract establishes what the parties have agreed upon.

In contrast, tort law is designed to secure the protection of all citizens from danger of physical harm to their person or to their property. State of Hawaii ex rel. Bronster v. U.S. Steel Corp., 919 P.2d 294, 302 (Haw. 1996).  Tort law seeks to enforce standards of conduct that are imposed by society.  Id.

Tort law has not traditionally protected strictly economic interests related to product quality.  Newtown Meadows, 167 P.3d at 293-95.  Courts have generally refused to create a duty in tort to prevent such economic losses.  Id. (citing Washington Courte Condo. Ass'n-Four, 501 N.E.2d 1290, 1294 (Ill. App. 1986); Oceanside at Pine Point Condo. Owners Ass'n v. Peachtree Doors, Inc., 659 A.2d 267, 270 (Me. 1995); Calloway, 993 P.2d at 1268; Bay Breeze Condo. Ass'n v. Norco Windows, Inc., 651 N.W.2d 738, 745-46 (Wisc. Ct. App. 2002)).

**II.  The Economic Loss Rule Applies in this Case**

This case involves a toilet connector manufactured by Defendants in 2002 that was installed in the home of Charles and Jennifer Kelley sometime after 2003.

The Kelleys purchased the home in the 1990's before the toilet connector was manufactured.  The Kelleys have provided no information as to the purchase date or date of installation of the product.  The toilet connector could not have been installed in the home before 2003.

It is not known if the toilet connector was purchased as part of a toilet or a plumbing system, or if it was a replacement part.

Plaintiff Insurance Company seeks economic damages in negligence and products liability for the alleged defect in the Defendants' toilet connector.

The economic loss rule prevents a plaintiff from bringing tort causes of action for purely economic loss stemming from injury only to the product itself. Newtown Meadows, 167 P.3d at 278. Damage to the product itself means that the product has not met the customer's expectations, or, in other words, that the customer received "insufficient product value." Bronster, 919 P.2d at 302 (quoting East River S.S. Corp., 476 U.S. at 871-72)). To recover in tort, there must be a showing of harm above and beyond an individual's disappointment that a product did not perform up to the purchaser's expectations. Newtown Meadows, 167 P.3d at 282.

The economic loss rule marks the fundamental boundary between the law of contracts, which is designed to enforce expectations created by agreement, and the law of torts, which is designed to protect citizens and their property by imposing a duty of reasonable care on others. Leis Family Ltd. P'ship v. Silversword Eng'g, 273 P.3d 1218, 1221 (Haw. Ct. App. 2012) (citing City Express, Inc. v. Express Partners, 959 P.2d 836, 839

(Haw. 1998)).

The distinction that the law has drawn between tort recovery for physical injuries and warranty recovery for economic loss is not arbitrary. Leis Family Ltd. P'ship, 273 P.3d at 1222. When a product injuries only itself the reasons for imposing a tort duty are weak and those for leaving the party to its contractual remedies are strong. Bronster, 919 P.2d at 302.

In Newtown Meadows, the Hawaii Supreme Court explained that injury to a product itself for purposes of the economic loss rule includes consequential damages to property other than the allegedly defective product. 167 P.3d at 287. The Hawaii Supreme Court ruled that the claims of damage to the cracked floor tiles, walls, doors, and windows, that were allegedly caused by the defendant's defective product, were consequential damages that could not be recovered in tort. Id. at 294-95.

Federal district courts applying the holding in Newtown Meadows have precluded a plaintiff from recovering in tort when the only damages alleged were consequential monetary damages. Burlington Ins. Co. v. United Coatings Mfg. Co., Inc., 518 F.Supp.2d 1241, 1254 (D. Haw. 2007) (finding that the plaintiff could not recover in tort for damage caused to walls, windows, and parking lots by the defendant's allegedly defective wall coating).

Plaintiff cannot recover in tort in this case. Plaintiff's

tort claims based on the toilet connector's failure to function as expected is most naturally understood as a warranty claim. East River S.S. Corp., 476 U.S. at 872. The toilet connector in this case was manufactured in 2002, with a one-year limited warranty. The warranty provided the terms of the parties' expectations.

When a product is bought for use in a home, the expectations of the parties, including the property owner and the manufacturer, are created by contracts with mutually agreed-upon terms. The terms of the contract allow the parties to negotiate price, duration of warranty, product specifications, and need for insurance.

The Kelleys were the owners of the home when the product was installed. Their failure to provide information about the manner of purchase and installation of the product does not change the relationship.

The economic loss rule serves to protect parties' freedom to contract when negotiating the purchase of products. The economic loss rule encourages the party with the best understanding of the attendant risks of economic loss, the purchaser, to assume, allocate, or insure against the risk of loss caused by a defective product. Daanen & Janssen, Inc. v. Cedarapids, Inc., 573 N.W.2d 842, 849-850 (Wis. 1998).

Here, the Kelleys were the party with the best understanding

of the attendant risks involved with the toilet connector. The Kelleys properly purchased insurance to protect themselves against loss. Allowing the Plaintiff Insurance Company to proceed in tort for economic damages ten years after the product was placed in the stream of commerce, despite the presence of a one-year limited warranty, would violate the purpose of the economic loss rule.

Plaintiff contends that an exception to the economic loss rule applies because the Kelleys suffered damage to their home. All of the damages incurred by the Kelleys were consequential damages that were foreseeable. Burlington Ins. Co., 518 F.Supp.2d at 1254; Launiupoko Water Co. v. J-M Mfg. Co. Inc., Civ. No. 14-00303 DKW-KSC, 2014 WL 6685965, *3 (D. Haw. Nov. 25, 2014) (finding economic damages resulting from the defendant's leaking pipes were consequential and foreseeable damages that could not be recovered in tort).

The Kelleys' injuries were limited to consequential monetary damages that arose from the alleged defect in the toilet connector. (Damage Summary submitted to Plaintiff Commerce and Industry Insurance Company, attached as Ex. C to Def.'s CSF, ECF No. 53-5). Any damage caused by the water flowing into the Kelleys' home is economic loss that may not be recovered in tort. Launiupoko Water Co., 2014 WL 6685965, at *3; Fireman's Fund Ins. Co. v. Sloan Valve Co., 2011 WL 5598324, *3-*4 (D. Nev. Nov. 16,

2011) (finding water damage caused to a building by a leaking flush valve was not recoverable in tort pursuant to the economic loss rule).

The damages are reasonably foreseeable in this case given the time frame at issue. The damages caused by water leaking into the Kelleys' home are exactly the damages that would be expected if the toilet connector failed. In this case, there is no reasonable basis for the Kelleys to expect the product to continue to function with no wear and tear over an unknown period of time. The product came with a one-year limited warranty. There was no lifetime guarantee for the product.

The Kelleys assumed the risk that the product may fail after the one-year limited warranty. The Kelleys could have attempted to negotiate a better warranty or could have purchased a different product with a longer warranty. In this case, the Kelleys appropriately sought insurance to protect themselves against loss.

Just as the damages caused in <u>Newtown Meadows</u>, <u>Burlington Ins. Co.</u>, <u>Fireman's Fund</u>, and <u>Launiupoko Water Co.</u>, the damage to the Kelleys' home falls within the economic loss rule because the damages constitute pecuniary consequential damages.

The economic loss rule encourages parties to negotiate sales contracts when purchasing products and allows the parties to estimate the risks and rewards of doing business, to adjust their

respective obligations, and to satisfy their mutual expectations. <u>Newtown Meadows</u>, 167 P.3d at 279-82.

The economic loss rule applies in this case. Plaintiff's tort claims for strict products liability and negligence are precluded pursuant to the economic loss rule.

## CONCLUSION

Defendants' Motion for Summary Judgment (ECF No. 52) is **GRANTED**.

The Clerk of Court is **DIRECTED** to enter judgment in favor of the Defendants and to **CLOSE THE CASE.**

IT IS SO ORDERED.

DATED: October 31, 2016, Honolulu, Hawaii.

Helen Gillmor
United States District Judge

<u>Commerce and Industry Insurance Company, as subrogee of Charles and Jennifer Kelley vs. Watts Water Technologies, Inc.; Watts Regulator Co.; John and Jane Doe 1-20; Doe Corporations 1-20; Doe Partnerships 1-20; Doe Governmental Entities 1-20; Doe Entities 1-20</u>; Civ. No. 15-00324 HG-KJM; **ORDER GRANTING DEFENDANTS WATTS WATER TECHNOLOGIES, INC. AND WATTS REGULATOR CO.'S MOTION FOR SUMMARY JUDGMENT (ECF No. 52)**